Stephen R. Cornwell, CA Bar #40737
CORNWELL & SAMPLE, LLP
Attorneys at Law
7045 N. Fruit Avenue
Fresno, CA 93711
Telephone: (559) 431-3142
Facsimile: (559) 436-1135

Attorneys for Plaintiff AL GOOD dba
CASTLE ROCK VINEYARDS

(SPACE BELOW FOR FILING STAMP ONLY)

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA, FRESNO DIVISION

| | |
|---|---|
| AL GOOD dba CASTLE ROCK VINEYARDS,<br><br>   Plaintiffs,<br><br>v.<br><br>OCEAN NETWORK EXPRESS (NORTH AMERICA) INC.; Does 1 to 10.<br><br>   Defendants. | CASE NO.:<br><br>**COMPLAINT FOR DAMAGES**<br><br>**DEMAND FOR JURY TRIAL** |

  COMES NOW the Plaintiff in this action, AL GOOD dba CASTLE ROCK VINEYARDS, demanding a jury trial for the cause herein, and alleges the following facts in support of his claim against the Defendant OCEAN NETWORK EXPRESS (NORTH AMERICA) INC. (hereafter "ONE LINE"):

### PARTIES

  1. Plaintiff AL GOOD is an individual who was and is, at all times relevant, doing business in Richgrove, Kern County, California as CASTLE ROCK VINEYARDS.

  2. Defendant OCEAN NETWORK EXPRESS (NORTH AMERICA) INC. aka "ONE LINE" is an international shipping company. Plaintiff is currently

COMPLAINT FOR DAMAGES
DEMAND FOR JURY TRIAL
-1-

1  unaware of the principal place of business of ONE LINE but alleges that it does a
2  substantial amount of business in California and is licensed to conduct business in the
3  State of California and did business in the State of California in making the agreement to
4  carry the goods of the plaintiff herein over the Pacific Ocean.  If any additional facts
5  become known as to the capacity of the defendant or that bear upon whether the court has
6  jurisdiction of the matter, Plaintiff will move the court to amend this complaint.

## JURISDICTION OF THE COURT AND VENUE OF THIS ACTION

3. Plaintiff brings this action for damages under the Carriage of Goods By Sea Act, 46 USCS Appx. §1300 et seq.  This Court has jurisdiction of this action pursuant to 28 USC §1333, as this is a case based on commercial shipping transactions governed by substantive rules of federal maritime law.  Plaintiff also brings state law claims for damages for common carrier negligence and breach of contract.  The state law claims are based on the same operative facts and circumstances as the federal claim and form part of the same case or controversy as the federal claim.  This Court then has supplemental jurisdiction of the state law claims pursuant to 28 USC §1367.

4. Venue of this action is appropriate in the Eastern District pursuant to 28 USC §1391 (b) (2) and (c), because Plaintiff resides in and does business in this District, a shipping contract between the parties was negotiated and formed in this District whereby the Defendant agreed to carry the goods of the Plaintiff from Oakland to Hong Kong, and the produce that was the subject of the shipping contract, Autumn Royal grapes, which became the cargo described in certain sea waybills at issue here, was grown, harvested, and shipped in this District.

## REQUEST FOR JURY TRIAL

5. Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff hereby demands a jury trial on any and all issues triable by a jury.

## GENERAL FACTUAL BASIS FOR COMPLAINT

6. Plaintiff is a grower of grapes, for which he has markets in both the United States and overseas in Asia and Europe.  In January of 2021, Plaintiff entered into

a contract of affreightment with ONE LINE for the transport of plaintiff's Autumn Royal grapes to Hong Kong.

7. The Chinese New Year in 2021 was to begin on February 12, 2021 and continue for ten days thereafter. This is a matter of common knowledge in the shipping industry because during the Chinese New Year the port of Hong Kong is closed during the Chinese holiday starting February 12, 2021 this year. The sale of grapes during the Chinese holiday is a premium market that the containers shipped here were to provide to the buyer. The buyer for the grapes was Tung Shing Fresh Fruit Company Ltd. In Kowloon, Hong Kong. Prompt delivery of these grapes was a vital condition of the shipment to be sure the grapes were kept in an optimal condition and to take advantage of the Chinese holiday when the sale of premium grape to Chinese consumers is optimal.

8. The Plaintiff and the Defendant agreed on a contract of transport to ship six containers of grapes from Oakland to Hong Kong to arrive no later than February 8, 2021. The transport of the Plaintiff's grapes required refrigeration to 31 degrees to maintain them as fresh for sale in Hong Kong. Plaintiff had a buyer for the grapes. Each container held 1500 boxes of grapes which were contracted to be purchased by Tung Shing Fresh Fruit Co. LTD based on the condition that the grapes would arrive in Hong Kong on February 8, 2021. The Defendant agreed to transport refrigerated containers to Hong Kong and keep them refrigerated for arrival in Hong Kong no later than February 8. The conditions for loading on the One Line ship, the YM Upward, were that the grapes were to be loaded in Oakland on the YM Upward on January 19, 2021, would depart Oakland on January 21 and would arrive in Hong Kong no later than February 8. A copy of one straight bill of lading and booking sheet for one container, Booking number RICV26565300 is attached hereto as Exhibit "A" and incorporated herein by reference. A list of the order numbers, time of departure, time of arrival, booking numbers, ship identification and container numbers is attached hereto and incorporated herein by reference as Exhibit "B".

9.   Pursuant to the sea waybills, One Line agreed to and did undertake to transport Plaintiff's grapes to Hong Kong to comply with the shipment contract. However, the ship did not arrive in Hong Kong with the Plaintiff's grapes but rather the ship ported to Pusan, South Korea on February 5, 2021. On information and belief Plaintiff alleges that the containers were off loaded to the port in Pusan and remained there for two weeks. These six containers actually were rerouted by the Defendant and arrived at Hong Kong on February 24, 2021, sixteen days late.

10.   On arrival in Hong Kong it was believed that many of the grapes would be difficult or impossible to market. In fact, the grape containers were surveyed and decay was found when examined. Consequently, the price of the grapes was drastically reduced so that instead of realizing $41,925.00 for each container, the Plaintiff was paid $5,250.00 for each container for a loss of $220,050.00 for all six containers. Further, when the grapes did arrive it was past the Chinese New Year, so the market price for grapes had substantially softened. Further the survey of the containers variously reported that the grapes had dehydration, decay and rot development, stem browning, mold, and other deteriorated conditions, all of which are caused by the late arrival of the grapes to the agreed destination. The Plaintiff has no knowledge of the conditions under which the six containers were stored in Korea but has been informed that the containers were unloaded and stored on the dock in Korea when they were supposed to be in Hong Kong. The delay resulted in the decayed condition of the Autumn Royal grapes to the damage of the Plaintiff.

## FIRST CLAIM:  LIABILITY BASED ON THE
## CARRIAGE OF GOODS BY SEA ACT, 46 USCS Appx. § 1300 et seq.

11.   Plaintiff realleges the allegation set forth in Paragraphs 1 through 10, inclusive, and incorporates them herein by reference.

12.   On or about January 19, 2021, Plaintiff delivered to ONE LINE certain cargo consisting of Autumn Royal table grapes in good order and good condition for carriage to Hong Kong to arrive by February 8, 2021, in time to be marketed in Hong

Kong for the Chinese New Year. ONE LINE accepted the cargo as evidenced by sea waybills issued by it.

13. The cargo did not arrive in Hong Kong at the agreed time but rather it was diverted so that it could not arrive in Hong Kong as contractually agreed. Instead, they arrived in Pusan, South Korea and was not rerouted to Hong Kong until February 24, 2021, sixteen days late. The late arrival of the grapes deprived the purchaser thereof of a premium price for the sale of fresh grapes. Instead of fresh fruit to sell at a premium price when the market was ideal for the sale of grapes, the grapes were too late for the ideal market conditions of the Chinese New Year and the grapes had some decay due to delayed arrival in Hong Kong some sixteen days late.

14. At all times throughout the voyages, ONE LINE had an obligation to provide proper stowage, including refrigeration that was fit and safe for the reception, carriage, and preservation of its cargo, and to transport the grapes in a commercially acceptable manner which would not damage them and to transport them to their destination to arrive within the time contractually agreed by the parties. ONE LINE had a further obligation to properly and carefully load, handle, stow, carry, keep, care for, and deliver to the proper port the goods it carried. ONE LINE knew or should have known that Plaintiff's grapes, as a perishable commodity, needed to be stored in carefully regulated conditions and temperatures and to be delivered promptly to the proper destination without delay. ONE LINE failed to accomplish its obligations causing the Plaintiff damages in the amount of $220,050.00 plus interest from February 8, 2021 to the present.

### SECOND CLAIM: COMMON CARRIER NEGLIGENCE

15. Plaintiff realleges the allegations set forth in Paragraphs 1 through 14, inclusive, and incorporates them herein by reference.

16. At all times herein mentioned, ONE LINE owned or controlled the vessel, the YM UPWARD, upon which containers of Plaintiff's grapes were loaded and were to be delivered to Hong Kong.

17.     The ONE LINE ship was a common carrier pursuant to California Civil Code § 2168 and 46 USCS Appx. § 1702 of The Shipping Act of 1984, offering to the public to carry property for hire. As such, ONE LINE had a nondelegable duty to use the utmost care and skill called for to transport cargo without loss or damage and to otherwise avoid harm to the cargo by delivering it to Hong Kong when agreed. ONE LINE failed to do so properly thus breaching its obligations to the Plaintiff and causing the Plaintiff damages.

18.     On information and belief Plaintiff believes that ONE LINE failed to adhere to its promises by accepting perishable goods for delivery to Hong Kong knowing that the date of arrival was paramount and to make a timely delivery to Hong Kong by rerouting the YM Upward to Pusan rather than Hong Kong with the anticipated result that Plaintiff's perishable goods were not be salable or as salable by the delay of arrival in Hong Kong after the Chinese New Year and after an extended period in the containers which resulted in anticipated damage to the grapes. During the period of transport, ONE LINE negligently owned, controlled, and operated the vessels or other means of transport carrying Plaintiff's cargo so that the cargo was improperly stowed on board and/or the refrigerated containers holding the grapes did not maintain the required cool temperature of 0.55C/31.01F and/or were transported in such a manner that the grapes were bruised or otherwise damaged and/or, as perishable, were delayed in arrival at the port of destination. On information and belief, Plaintiff alleges that the damage observed upon completion of the transport evidenced damage and/or deterioration resulting in damage to the grapes.

19.     As a direct and proximate result of the negligence and carelessness of ONE LINE in transporting and stowing the containers of Plaintiff's grapes, the grapes were delivered in a state of excessive waste and decay, unfit for the intended use of Plaintiff's customers, and outside the customers' specifications. Plaintiff sustained economic injury as a result of the deterioration of the grapes of $220,050.00 plus interest pursuant to California law of ten percent (10%) from February 8, 2021. Plaintiff has also incurred further losses due to storage inspection.

## THIRD CLAIM: BREACH OF CONTRACT

20. Plaintiff realleges the allegations set forth in Paragraphs 1 through 19, inclusive, and incorporates them herein by reference.

21. Plaintiff and ONE LINE entered into a shipping agreement, which is memorialized in bills of lading for shipments made pursuant to the terms of the shipping agreement.

22. Plaintiff performed all conditions, covenants, and promises required on his part to be performed in accordance with the terms and conditions of the shipping agreement memorialized in the sea waybills and the bills of lading, except for those matters which have been waived or forgiven or made impossible by ONE LINE.

23. During the period January 21, 2021 to February 8, 2021, ONE LINE breached the shipping agreement by failing to keep Plaintiff's refrigerated cargo properly stowed and adequately cooled and promptly delivered and delivered timely with the expectation that the grapes would be marketable in the ideal conditions before the Chinese New Year.

24. As a result of ONE LINE's breach, Plaintiff's grapes were delivered sixteen days late in a state of some waste and decay, unfit for the intended use of Plaintiff's customers, and outside the customers' specifications. Plaintiff has lost the commercial value of his grape cargo to his economic damage in the amount of $220,050.00 plus interest at the legal rate provided by California law.

## PLAINTIFF'S DAMAGES

25. Plaintiff has been damaged in the loss of the commercial value of his grapes. Further, Plaintiff has been damaged to the extent Plaintiff incurred picking, packing, transportation, surveying and shipping expenses to transport the grapes to Hong Kong the extent of which will be determined. In addition, Plaintiff incurred expenses for inspection of the damaged cargo in Hong Kong as well as other reasonable expenses caused by the Defendant's breach.

///

## PRAYER

WHEREFORE, Plaintiff prays:

1. For judgment against Defendants OCEAN NETWORK EXPRESS (NORTH AMERICA) INC., aka ONE LINE, for loss of value of transported grapes;

2. For cargo damages under the Carriage of Goods By Sea Act, 46 USCS Appx. §1300 et seq;

3. For economic loss, and compensatory and consequential damages according to law and in a sum according to proof;

4. For interest at the legal rate, as provided by law, including but not limited to California Civil Code §§ 3287, 3288, and 3289;

5. For costs of suit incurred herein; and

6. For such other and further relief as the Court deems just and proper.

DATED: December 27, 2021                         CORNWELL & SAMPLE, LLP

                                                By: _____
                                                    Stephen R. Cornwell
                                                    Attorneys for Plaintiff
                                                    AL GOOD dba CASTLE ROCK
                                                    VINEYARDS

Plaintiff AL GOOD dba CASTLE ROCK VINEYARDS hereby respectfully requests a trial by jury pursuant to Rule 38(b) of the Federal Rules of Civil Procedure.

DATED: December 27, 2021                         CORNWELL & SAMPLE, LLP

                                                By: _____
                                                    Stephen R. Cornwell
                                                    Attorneys for Plaintiff
                                                    AL GOOD dba CASTLE ROCK
                                                    VINEYARDS

# EXHIBIT A

## STRAIGHT BILL OF LADING FOR EXEMPT COMMODITIES - ORIGINAL NON-NEGOTIABLE

**Shipper:**
Castle Rock Vineyards
Route 2, Box 299
Delano, CA 93215

Ship: January 14, 2021
Load:
Out:
Dlvr By:
Driver:
Driver Lic:

Order #: 88690
Cust PO: WK 2
Terms: CIF
Slsprsn: Daniel Gomez
Truck Lic:
Trailer Lic: SEGU9839582

**To (Consignee):**
Tung Shing Fresh Fruit Company Ltd.
RM 15, 16/F CONCORDIA PLAZA
1 SCIENCE MUSEUM ROAD, TST EAST
KOWLOON HONG KONG

**Destination:** Telephone:
Tung Shing Fresh Fruit Company Ltd.
RM 15, 16/F CONCORDIA PLAZA
1 SCIENCE MUSEUM ROAD, TST EAST
KOWLOON HONG KONG

Page 1 of 2

Carrier: OPT
Carrier Arranged By:
Truck Brkr:
Temp Degrees F.  Low: 32F  High: 34F
Ship Via: Ship  Loaded At: Cooler #1
Ship Charges Paid By:

**Reporting Instructions:**

| Ordered | Shipped | Description | Gross Weight |
|---|---|---|---|
| 1500 | 1500 | Autumn Royal Grapes 18# SU Bag Styro 5L ROYALTY Product of USA | 31500 |
| 1500 | 1500 | | 31500 |
| | 2 | Temp Recorder w772380 w772396 | |
| | 1 | Air Bag | |
| | 1 | Inspections X-605732-8 | |

SEAL# UL-4020576
VESSEL YM UPWARD L-01/19 D-01/21 A-02/08

Inspection:  Recorder No:  Chart No:
Loading Instructions:
Delivery Instructions:
Billing Instructions:

### Contract Terms and Conditions

1. Where used in this Bill of Lading, the term Carrier means the person, firm, or corporation operating the motor vehicle and in possession of the property under this contract; and the execution of this contract by the Carrier shall bind jointly, and severally, the person, firm or corporation owning or operating the motor vehicle. The Carrier assumes full responsibility for any and all loss, damage or delay to the property while in its possession and until delivery to the consignee except when the loss, damage, or delay is caused by an act of God, act of public enemy or by an act of ommision of the shipper or consignee.

2. The Carrier agrees to transport of property under protective service, at the temperature specified, between the orgin and destination shown in this contract and to deliver the property to the consignee in good condition at the delivery time specified, if any. In the event the Carrier fails to so transport and deliver the property, then the Carrier agrees to pay the owner of the property for the actual loss or injury to the property resulting from such failure.

3. It is further agreed that if no specific delivery time is stated on this contract, then timely delivery of the property will be based on the Carrier's usual and normal schedule for perishable shipments transported with reasonable dispatch between the points shown on this contract. The Carrier represents that the delivery can be performed without violating any local, state or federal traffic or safety laws or regulations, and that it has complied with and will comply with all laws and regulations of local, state and federal authorities which could affect this transportation or agreement.

4. Claims against either or both the Carrier or Truck Broker, if any, must be filed within nine months of delivery, or in the case of failure to make delivery, then within nine months after a reasonable time for delivery has elapsed. Such claims may be filed either with a Carrier or Truck Broker, if any.

5. The Carrier warrants and represents to shipper and consignee, or other owner of the shipment, that the motor vehicle described in this contract is covered by a valid effective insurance policy, in at least the amounts prescribed by the federal government. It is further represented that this shipment is covered by a presently effective cargo insurance policy in at least the amount of $25,000.00 and that additional coverage will be obtained to cover the actual value of the shipment if the shipper states the value on the face of this contract.

6. All parties acknowledge that the Truck Broker, for compensation received from the Carrier, has acted as the Carrier's agent. It is acknowledged that the shipper or consignee has relied on the Truck Broker in securing adequate and satisfactory transportation services, and that the Truck Broker agrees to indemnify and hold harmless the shipper or consignee or other owners of the property transported from any loss due to the Carrier's negligence, act of ommission, or any failure to fully perform and comply with the terms of this agreement.

RECEIVED from the shipper named herein, the perishable property described in good order and condition, except as noted, marked, consigned and destined as indicated, pursuant to an agreement (arranged by the truck broker, name herein, if any), whereby the carrier, in consideration of the transportation charges to be paid, agrees to carry and deliver said property to the consignee, subject only to the terms and conditions of this contract, which may be printed or written on the face or back hereof, which are hereby agreed to by the carrier, shipper, and the truck broker if any.

Shipper: _Yadira Chavez_ Date: 1/14/21
Carrier: _[signature]_ Date: 1/14/21
Received above in good shipping condition and verified count.
Consignee: _____ Date: _____
Received above perishable property in good order, except as noted.

# ONE

**Booking Receipt Notice**

12 JAN 21 12:38  Page : 1/2

To    : Torrey Clark / CASTLE ROCK VINEYARDS(Tel:1-562-316-1215 / Fax:
From : Ocean Network Express (North America) Inc. / Kristin Ozimkiewicz (TEL: )

We received a booking request by you as follows. Please review following items and advise us of any discrepancy.

| Booking No: RICB26565300 | Booking Ref. No.: | | Booking Date : 12Jan21 |
|---|---|---|---|
| Booking Staff | : Kristin Ozimkiewicz | Export Ref.NO | : |
| Sales Rep | : JONATHAN ARANAS | B/L No. | : ONEYRICB26565300 |
| Shipper | : CASTLE ROCK VINEYARDS | | |
| Forwarder | : BRITISH AMERICAN SHIPPING, LLC | Service Contract No | : LAX0311B20 |
| Pre Carrier | : | Latest ETA/ETD | : |
| IMO/Flag/Call Sign | : | NRT | : |
| Trunk Vessel | : YM UPWARD 069W(PS3) | Latest ETA/ETD | : 20Jan21/21Jan21 |
| MRN(Korea only) | : | CCN | : |
| IMO/Flag/Call Sign | : 9337468/LIBERIA/A8OR6 | NRT | : 55413 |
| Post Carrier | : GREEN OCEAN 032S(KHX) | ETA/ETD | : 05Feb21/05Feb21 |
| IMO/Flag/Call Sign | : 9865960/SINGAPORE/9V6354 | NRT | : 7170 |
| Place of Receipt | : OAKLAND, CA | | |
| Port of Loading | : OAKLAND, CA | Terminal : TRAPAC OAKLAND | |
| Port of Discharging | : HONG KONG | Terminal : HIT (HONGKONG INTERNATIONAL TERMINALS) | |
| Place of Delivery | : HONG KONG | Terminal : | |
| T/S Port | : PUSAN | POD/DEL ETA : 08Feb21 / 08Feb21 | |
| Ocean Route Type | : Non-direct | Rcv/Del Term : CY/CY | |
| Equipment Type/Q'ty : | 40H.REEFER-1 | | |
| Commodity | : GRAPES, FRESH | Estimated Weight | : 17,100.000 KGS |
| Empty Pick UP CY | : CONGLOBAL - OAKLAND (REF) | Empty Pick Up Date | : |
| Address | : 555A MARITIME STREET,, OAKLAND, CA | | |
| TEL | : 971-998-2428 | Yard PIC | : Jason Simonson |
| Full Return CY | : TRAPAC OAKLAND | Full Return Date | : 19Jan21 16:00 |
| Address | : TraPac Inc. - MOL  2800 7th Street  Berth 30  Oakland  CA | | |
| TEL | : 5102868600 | Yard PIC | : |
| Doc Cut-off | : 18Jan21 12:00 | Customs Cut-off | : |
| VGM Cut-off | : 19Jan21 16:00 | | |
| Port Cargo Cut-off | : 19Jan21 16:00 | Rail Receiving Date | : ~ |

Special Cargo Information (Please see attached, if exists)    [ ] Shipper's own Container    [ ] RAD

[ ] Dangerous    [V] Reefer (Temp. Set -.6°C(31°F) )    [ ] Awkward    [ ] Break Bulk

Remarks 1 : COMMODITY: GRAPES
           31F / 0CMH / GENSET REQUIRED

Remarks 2 : See attached rider.

. THE ABOVE BOOKING IS SUBJECT TO CHANGE FOR DELIVERY DATE/TIME AS WELL AS TO VESSEL SPACE.
VESSEL SCHEDULE MAY BE CHANGED WITHOUT NOTICE. ANY DATE/TIME ABOVE IS FOR MERCHANT'S
REFERENCE ONLY AND WITHOUT ANY GUARANTEE.

Customer Service : 844-413-6029

Thank you for choosing ONE

# EXHIBIT B

| Order # | ETD | ETA | Booking # | Ship Line | Conatainer # |
|---|---|---|---|---|---|
| 88690 | 21-Jan | 8-Feb | RICB26565300 | YM UPWARD | SEGU9839582 |
| 88691 | 21-Jan | 8-Feb | RICB26565301 | YM UPWARD | CXRU1059842 |
| 88692 | 21-Jan | 8-Feb | RICB26565302 | YM UPWARD | MORU1103886 |
| 88693 | 21-Jan | 8-Feb | RICB26565303 | YM UPWARD | KKFU6777681 |
| 88694 | 21-Jan | 8-Feb | RICB26565304 | YM UPWARD | CXRU1156349 |
| 88695 | 21-Jan | 8-Feb | RICB26565305 | YM UPWARD | SEGU9904590 |